UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 CR 345 |
| v. | ) | |
| | ) | Honorable Susan E. Cox |
| JAIME VITERI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, respectfully submits the following position paper as to sentencing factors. Based upon the evidence in this case, and in light of the factors contained in 18 U.S.C. § 3553, the government recommends a sentence at the low-end of the applicable guidelines range, 12 to 18 months. The government also recommends that the Court impose restitution in an amount not less than $80,000.[1]

## I.
## PROCEDURAL BACKGROUND

On June 12, 2014, Mr. Viteri was charged in a criminal information with three counts of willfully failing to file U.S. individual income tax returns, Forms 1040, for the tax years 2007, 2008, and 2009, in violation of Title 26 U.S.C. § 7203. To prove that Mr. Viteri violated Title 26 U.S.C. § 7203, the government had to establish the following

---

[1] The government has no objections to the Presentence Investigation Report, dated September 30, 2014.

elements: (1) Mr. Viteri was required to file a tax return as required by law; (2) Mr. Viteri failed to file a tax return at the time required by law; and (3) Mr. Viteri acted willfully in failing to file a tax return (i.e., he knew he had a legal duty to file an income tax return, and he willfully decided not to file an income tax return). United States v. Foster, 789 F.2d 457, 460 (7th Cir. 1986) (describing elements of 26 U.S.C. § 7203).

On July 9, 2014, Mr. Viteri pled guilty to two misdemeanor counts of willfully failing to file U.S. individual income tax returns, Forms 1040, for the tax years 2008 and 2009. Sentencing is scheduled for November 19, 2014.

## II.
## FACTUAL BACKGROUND

The focus of the criminal case involves "Viteri, Inc.," d/b/a/ Chicago Latino Network, which is a business that Mr. Viteri owned and operated for several years while he was also an employee of the State of Illinois. Mr. Viteri made large sums of money from the business, but it went undetected until the State of Illinois, Office of Executive Inspector General ("OEIG"), provided IRS-Criminal Investigation with information that suggested Mr. Viteri was evading taxes.

The federal investigation conducted by IRS-Criminal Investigation established that during the years 2007, 2008, and 2009, Mr. Viteri earned gross income from working as: (1) the President and CEO of "Viteri, Inc.," d/b/a/ Chicago Latino Network, a media company focused on the Latino community in Chicago;[2] and (2) the managing director of the Bureau of Entrepreneurship and Small Business at the Department of Commerce and

---

[2] During these years, Mr. Viteri was the sole owner and sole employee of the business.

Economic Opportunity ("DCEO"), which is a government agency of the State of Illinois. Mr. Viteri did not file individual or corporate tax returns for the years 2006, 2007, and 2008. As noted, the unreported income that Mr. Viteri earned from his business forms the basis of the criminal case.[3]

(a) *"Viteri, Inc.," d/b/a/ Chicago Latino Network*

As the President and CEO of "Viteri, Inc.," d/b/a/ Chicago Latino Network ("CLN"), Mr. Viteri operated a financially successful business. The business generated revenue from three different sources: (1) businesses that paid CLN to appear as sponsors and advertisers at events for local business professionals, which included at least two large events: Schmoozefest and an Annual Gala;[4] (2) customers who paid for tickets to attend these events; and (3) customers who paid subscription fees for access to an online-internet monthly newsletter that focused on issues and events in the Latino community. The sponsors and advertisers typically paid Mr. Viteri by check, and during these years the checks totaled more than $50,000 in 2007, $90,000 in 2008, and $120,000 in 2009. Mr. Viteri typically cashed these checks at a local currency exchange business. After cashing the checks, Mr. Viteri typically deposited the cash into his J.P. Morgan Chase bank account.

Customers who paid Mr. Viteri for the tickets to the events, or access to the online newsletter, generally paid through Paypal, and these payments were also deposited into his personal bank account at J.P. Morgan Chase. According to an analysis of Paypal records by

---

[3] IRS-Criminal Investigation first notified Mr. Viteri that he was under criminal investigation when he was interviewed in April 2010.

[4] Corporate sponsors who paid CLN included, for instance, Starbucks, Aetna, the Chicago White Sox, the American Family Mutual Insurance Company, Aztec American Bank, and many other businesses.

IRS-Criminal Investigation, the ticket sales and online subscription fees totaled about $77,000 in 2007, $33,000 in 2008, and $43,000 in 2009.

The income generated from these three sources totaled approximately $127,000 for the 2007 tax year, $123,000 for the 2008 tax year, and $163,000 for the 2009 tax year. Despite earning this income, Mr. Viteri did not file tax returns with the IRS – either individual or corporate.

    (b)     *Employee of the State of Illinois*

At the same time Mr. Viteri was operating CLN, he was also employed as the managing director of the Bureau of Entrepreneurship and Small Business at the DCEO. As a DCEO employee, Mr. Viteri received W-2 wages totaling $85,970 in 2007, $91,335 in 2008, and $85,020 in 2009. Federal taxes were withheld from his wages in the amounts of $16,399 in 2007, $17,710 in 2008, and $16,175 in 2009. Because the DCEO withheld federal taxes from Mr. Viteri's wages, the criminal investigation focused on the unreported income and unpaid taxes from CLN.

    (c)     *Total Gross Income for the Years 2007, 2008, and 2009*

The following chart outlines the unreported gross income and unpaid taxes (i.e., tax loss) for the years 2007, 2008, and 2009:

| Tax Year | Gross Income (approximate) | Estimated Tax Loss |
|---|---|---|
| 2007 | $212,000 | $26,001 |
| 2008 | $214,000 | $25,090 |
| 2009 | $248,000 | $33,425 |
| **Total** | **$674,000** | **$84,516** |

(d)     _Origin of Criminal Investigation_

The federal investigation of Mr. Viteri began after IRS-Criminal Investigation received information from the OEIG concerning alleged ethical violations of Mr. Viteri while he was working at the DCEO, which included an allegation that he was evading taxes. See PSR (OEIG Report attached to PSR).

Mr. Viteri resigned from the DCEO in or around November 2009, and before the OEIG completed its investigation. The OEIG was investigating allegations that Mr. Viteri had: (1) performed work for his outside business (i.e., CLN) on government time; (2) engaged in political activities while on government time; (3) potential conflicts of interest matters; (4) submitted false documents with the state government (i.e., Statements of Economic Interests); (5) evaded paying personal income taxes; and (6) submitted a false employment application. Because Mr. Viteri resigned before the OEIG completed its investigation, the OEIG decided not to use additional resources to determine if the allegations could be substantiated. However, the OEIG did conclude that Mr. Viteri failed to submit a "Secondary Employment Form" for approval at DCEO, and that he performed work for CLN while on government time.

## III.
## <u>GUIDELINES CALCULATION</u>

Although the Sentencing Guidelines are advisory, the Supreme Court has stressed that the district court must treat them as "the starting point and initial benchmark." <u>Gall v. United States</u>, 552 U.S. 38, 49-50 (2007). As such, the district court must properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors, and adequately explain the chosen sentence, including an explanation for any variance from the guidelines range. <u>Id</u>.

(a)     *<u>Base Offense Level: Tax Loss</u>*

The base offense level should be calculated using U.S.S.G. § 2T1.1(a)(1) and § 2T4.1(F) (Tax Table) (tax loss of more than $80,000 but less than $200,000) (2013 ed.). The total criminal tax loss is at least $80,000 and results in a base offense level of 16. <u>See</u> Plea Agreement at p. 4, ¶ 10.[5]

---

[5] All conduct violating the tax laws should be considered as part of the same course of conduct. <u>See</u> U.S.S.G. § 1B1.3, Commentary & Application Notes, ¶ 9(B) (same course of conduct) (noting "a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct . . . "). In this case, the tax loss associated with the 2007 tax year should be included in determining the guidelines range. Mr. Viteri willfully failed to file a 2007 individual income tax return even though his gross income exceeded $200,000, and resulted in a tax due and owing of $26,001. The $26,001 of tax loss should be considered part of the same course of conduct as the charged offenses and used in determining Mr. Viteri's base offense level.

The following chart outlines the estimated total tax loss and the gross income from CLN and the W-2 wages that Mr. Viteri earned from working at the DCEO:

| Tax Year | Gross Income (approximate) | Tax Loss Based on 20% of Gross Income | W-2 Tax Withholding | Estimated Total Tax Loss |
|----------|-----------|------------|------------|------------|
| 2007 | $212,000 | $42,400 | $16,399 | $26,001 |
| 2008 | $214,000 | $42,800 | $17,710 | $25,090 |
| 2009 | $248,000 | $49,600 | $16,175 | $33,425 |
| **Total** | **$674,000** | **$134,800** | **$50,284** | **$84,516** |

According to the Sentencing Guidelines, § 2T1.1 (Notes), if the offense of conviction involved the "failure to file a tax return, the tax loss shall be treated as equal to 20% of the gross income . . . less any tax withheld or otherwise paid, unless a more accurate determination of the tax can be made." In this case, the government submits that a more accurate determination of tax cannot be made.[6] Therefore, the tax loss should be calculated using 20% of the gross income for the tax years 2007, 2008, and 2009. See U.S.S.G. § 2T1.1 (Notes).

    (b)    *Acceptance of Responsibility*

Mr. Viteri entered timely pleas of guilty, which resulted in the government not expending a substantial amount of resources in indicting the case and bringing the case to trial. Mr. Viteri is entitled to a 3 level downward adjustment based on his acceptance of responsibility. See U.S.S.G. § 3E1.1 (a) & (b). With a base level of 16 and a 3 level

---

[6] The government was unable to obtain business records and/or a general business ledger from Mr. Viteri that outlined the amount of gross income earned and business expenses paid for these years.

downward adjustment for acceptance of responsibility, Mr. Viteri's adjusted base offense level is a 13, which results in a sentencing range of 12 to 18 months, Zone C.

    (c)    *Criminal History Category*

Based on the information now known to government counsel, Mr. Viteri does not appear to have any criminal convictions that would increase his criminal history category. Mr. Viteri's criminal history category appears to be a level I. Please refer to the PSR for more information on this matter.

    (d)    *Fine*

Under the advisory guidelines, with an adjusted offense level of 13, the fine range is between $3,000 and $30,000. See U.S.S.G. § 5E1.2(c)(3) (2013 ed.). The parties did not agree to a fine, or recommend a fine, under the terms of the written plea agreement.

    (e)    *Restitution*

Mr. Viteri has agreed to pay at least $80,000 in restitution to the IRS. See Plea Agreement at p. 7, ¶ 14. Pursuant to Title 18 U.S.C. § 3663 and § 3663A, a court can order restitution when a defendant pleads guilty and agrees in the plea agreement to pay restitution in connection with that violation. See 18 U.S.C. § 3663(a)(3) ("The court may also order restitution in any criminal case to the extent agreed to by the parties in the plea agreement."); see also U.S.S.G. § 5E1.1(a)(1) (Restitution). The Court should impose an order of restitution of at least $80,000, and all restitution payments should be sent to the following address:

        IRS – RACS
        Attn: Mail Stop 6261, Restitution
        333 W. Pershing Ave.
        Kansas City, MO 64108

(f)     *Final Advisory Sentencing Guidelines Calculation*

Based on an adjusted offense level of 13 and a criminal history category of I, Mr. Viteri's sentencing range is 12 to 18 months, Zone C.  The government recommends a sentence at the low-end of the guidelines range.

**IV.**
**SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**

The framework for determining an appropriate sentence is set forth in 18 U.S.C. § 3553(a), which requires that the Court ensure the sentence imposed properly considers, among other factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense and promote respect for the law; (4) the need to afford adequate deterrence; and (5) the need to avoid unwarranted sentencing disparities.

(a)     *Nature and Circumstances of the Offense*

Mr. Viteri's decision not to file income tax returns, and not report the gross income from his business, is a crime that the Court should take seriously.  He earned substantial amounts of money from his business, but he intentionally decided not to report this income on income tax returns, or pay taxes on the income, to the IRS.  Mr. Viteri's conduct was not a one-time, isolated instance, but a continuing course of conduct.  Mr. Viteri knew better, as he had previously filed tax returns with the IRS in prior years.  As explained in the PSR, a close family member works for the Internal Revenue Service as a criminal investigator, and as noted in the PSR, Mr. Viteri has a close relationship with this individual; that point is that Mr. Viteri knew that he had a legal duty to file tax returns and he knew that there could be consequences for not filing tax returns (i.e., criminal prosecution).  Despite

9

this information, Mr. Viteri willfully decided not to file income tax returns for at least three years.

Additionally, this crime was not committed out of necessity, but rather out of greed, as Mr. Viteri earned substantial amounts of money from working for the State of Illinois and from his own business, CLN. The income and tax withholdings from his employment at the DCEO were reported to the IRS and the taxes were paid to the IRS. Yet because Mr. Viteri owned and controlled the finances of CLN he was able to conceal and hide the money from the IRS. Moreover, Mr. Viteri could afford to pay the taxes owed on the money he earned from CLN, but he instead made a conscious effort year after year not to report the income or file tax returns with the IRS. The Court should consider this conduct when fashioning an appropriate sentence.

As the Court is well aware, in the United States, the tax system relies on voluntary compliance – that is, individuals correctly reporting their income and paying taxes owed to the IRS. The most recent IRS study of tax compliance estimated that only 83.1% of individuals are compliant, leaving a yearly tax gap of over $385 billion dollars in unreported and uncollected taxes.[7]

(b)  *History and Characteristics of the Defendant*

There is nothing in Mr. Viteri's background that can excuse or justify his decision not to file the tax returns when they were due. Mr. Viteri is a successful businessman, who built a company through his own hard work and diligence, which makes his decision not to

---

[7] "IRS Releases New Tax Gap Estimates; Compliance Rates Remain Statistically Unchanged from Previous Study," Jan. 6, 2012, available at http://www.irs.gov/uac/IRSReleases-New-Tax-Gap-Estimates;-Compliance-Rates-Remain-Statistically-Unchanged-From-Previous-Study.

file tax returns and pay taxes all the more baffling. Greed probably played a role in his decision not to report the income. The government is unaware of any financial difficulties that would explain or excuse his decision not to file tax returns or pay the taxes owed for these years.

(i)     Prior Tax Filing History

Mr. Viteri has a history of filing tax returns and paying taxes. This evidence demonstrates that Mr. Viteri was well aware of his legal duty to file tax returns with the IRS, which is relevant to the issue of proving willfulness, which is an element of the crime, Title 26 U.S.C. § 7203. Moreover, the fact that a family member works for IRS-Criminal Investigation is itself strong, circumstantial evidence that he knew of his legal tax obligations and the potential consequences.

Prior Corporate Tax Return Filing History

For the tax years 2003, 2004, and 2005, Mr. Viteri signed and filed corporate tax returns, Forms 1120S, for Viteri, Inc. The 2003 corporate tax return was prepared by a certified public accountant, who worked at a local accounting firm. The corporate tax return reported less than $10,088 of gross income for the 2003 tax year. The 2004 and 2005 corporate tax returns appear to be self-prepared by Mr. Viteri and without the assistance of a tax professional, and each tax return reported less than $10,000 of gross income. All three corporate tax returns were signed by Mr. Viteri and filed with the IRS. For the tax years 2006, 2007, and 2008, the IRS has no record of corporate tax returns being filed for Viteri, Inc., d/b/a CLN.

11

<u>Prior Individual Income Tax Return Filing History</u>

The last individual income tax return that Mr. Viteri timely filed with the IRS was for the 2003 tax year, and it was filed with the IRS in December 2004. The tax return listed W-2 wages of less than $29,000 and S-corporation income of less than $2,000. Approximately $5,400 in federal income tax was withheld from his wages, and Mr. Viteri received a tax refund of $818 because his federal income tax withholdings exceeded the amount of federal income tax owed for that year. The IRS has no record of Mr. Viteri filing individual income tax returns for the tax years 2004 through 2008. Also, it does not appear that Mr. Viteri timely filed Illinois State tax returns for several years.

(c)    *<u>The Need to Reflect the Seriousness of the Offense</u>*

The financial harm to the public treasury in failing to pay more than $80,000 in taxes is itself substantial and should be treated seriously. In drafting the Sentencing Guidelines, the Sentencing Commission included a background statement with respect to U.S.S.G. § 2T1.1, which states: "Tax offenses, in and of themselves, are serious offenses; however, a greater tax loss is obviously more harmful to the treasury and more serious than a smaller one with otherwise similar characteristics. Furthermore, as the potential benefit from the offense increases, the sanction necessary to deter also increases." Background comment to U.S.S.G. § 2T1.1. As reflected in the Sentencing Commission's statement, with a higher tax loss, the sentence imposed must be greater in order to achieve an appropriate deterrent effect. The large tax loss caused by Mr. Viteri's intentional decision not to file tax returns and pay the taxes owed is another reason the Court should impose a guidelines sentence.

(d)    _The Need to Afford Adequate Deterrence_

A primary goal of sentencing is to provide deterrence, so that others will be less likely to commit crimes.  This case presents the Court with an opportunity to deter the general public and Mr. Viteri from committing tax fraud.

General deterrence is one of the prescribed goals of every sentencing, United States v. Dyer, 216 F.3d 568, 570 (7th Cir. 2000) (noting one principal objective of criminal punishment is deterrence), but it occupies an especially important role in sentencing for criminal tax offenses, because criminal tax prosecutions are relatively rare: [8]

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system.  Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws.  Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines.  Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

United States v. Vucko, 473 F.3d 773, 776 (7th Cir. 2007) (quoting U.S.S.G. Ch. 2, Pt. T, introductory cmt.).   "The policy statements likewise make it clear that the Commission believes that there must be a real risk of actual incarceration for the Guidelines to have a significant deterrent effect in tax evasion cases."  United States v. Engle, 592 F.3d 495, 502 (4th Cir. 2010).  General deterrence depends upon the public seeing some consequence for

---

[8]  The Guidelines Manual further explains that:

> Under pre-guidelines practice, roughly half of all tax evaders were sentenced to probation without imprisonment, while the other half received sentences that required them to serve an average prison term of twelve months.  This guideline is intended to reduce disparity in sentencing for tax offenses and to somewhat increase average sentence length.  As a result, the number of purely probationary sentences will be reduced. The Commission believes that any additional costs of imprisonment that may be incurred as a result of the increase in the average term of imprisonment for tax offenses is inconsequential in relation to the potential increase in revenue.

U.S.S.G. § 2T1.1, comment (backg'd).

criminal conduct. Thus, business owners with similar financial responsibilities as Mr. Viteri – in positions to delay, stall, and avoid filing tax returns and paying taxes to the IRS – must realize that such behavior carries with it a correspondingly serious punishment. As a result, a guidelines sentence can act as a general deterrent to others who might consider engaging in similar conduct.

Another important goal of criminal sentencing is to protect the public "from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The government recognizes that Mr. Viteri has no prior criminal history of tax fraud or non-compliance with the tax laws, and it seems unlikely that he will reoffend. Nonetheless, that should not result in a variance from the guidelines range. Instead, imposing a guidelines sentence recognizes Mr. Viteri's pattern of failing to file tax returns and can act as a specific deterrent to him.

(e)     *The Need to Avoid Unwarranted Sentencing Disparities*

The tax loss in this case is rather substantial, and Mr. Viteri should receive a sentence comporting with the intended and actual tax harm that resulted. Defendants with similar tax loss amounts have received lengthy prison sentences. See e.g., United States v. Pree, 408 F.3d 855 (7th Cir. 2005) (defendant re-sentenced, after Booker remand, to eighteen months for filing false tax returns based on a tax loss of $41,535.10); United States v. Higgins, 2 F.3d 1094, 1095-97 (10th Cir. 1993) (defendant sentenced to fourteen months incarceration for three counts of tax evasion where tax loss was about $11,000 for first year, $12,500 for next year, and $26,000 for the last year). The advisory guidelines range provides an objective range that promotes the goal of minimizing unwarranted sentencing disparities. United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005)

("[t]he Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country"). A sentence at the low-end of the guidelines range is appropriate.

    (f)    *Restitution*

As part of the plea agreement, Mr. Viteri agreed to pay at least $80,000 in restitution to the United States Treasury.

**V.**

**CONCLUSION**

For the foregoing reasons, the government respectfully recommends a sentence at the low-end of the guidelines range of 12 to 18 months.

Respectfully submitted,

TAMARA W. ASHFORD
Acting Assistant Attorney General
Tax Division
Attorney for the United States of America

*/s/ Christopher J. Maietta*
CHRISTOPHER J. MAIETTA
Trial Attorney
United States Department of Justice
Tax Division, Criminal Section